Filed 7/28/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| STEVEN DOLLASE, | B314900 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV19368) |
| v. | |
| WANU WATER INC., | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County.  Barbara Ann Meiers, Judge.  Reversed and remanded with directions.

Abt & Associates and Gregory D. Abt for Defendant and Appellant.

Norton Rose Fulbright US, James H. Turken and Neil P. Thakor for Plaintiff and Respondent.

————————————————

**SUMMARY**

The trial court entered a default judgment against defendant Wanu Water Inc. on June 16, 2020, and on December 7, 2020, defendant filed a motion to set aside its default and vacate the default judgment under the mandatory, attorney-fault provision of Code of Civil Procedure section 473, subdivision (b) (section 473(b)).  The mandatory provision requires the court to vacate the default judgment if the application is filed "no more than six months after entry of judgment," is "in proper form," and is accompanied by an attorney's affidavit of fault, unless the court finds the default "was not in fact caused by" the attorney's mistake, inadvertence, surprise or neglect.  (*Ibid.*)

Here, the trial court denied defendant's motion and gave no reason for its ruling.  The record shows the filing was timely and was accompanied by an attorney's affidavit of fault.  Thus, the only bases for denying the motion to vacate the default judgment were that the application was not "in proper form" or that the default "was not in fact caused by" the attorney's neglect. (§ 473(b).)  We have considered both possibilities and conclude neither justifies denying the motion.

Accordingly, the default and the default judgment must be vacated.

**FACTS**

**1.    The Court Filings:  June 3, 2019, to August 4, 2020**

On June 3, 2019, plaintiff Steven Dollase filed a complaint against defendant alleging causes of action for breach of contract, fraud and conversion.  The proof of service of the summons and complaint showed personal service by Tina Irizarry of First Legal on Frances Hernandez, National Registered Agents, Inc.,

2

Registered Agent for defendant, at an address in Dover, Delaware.

On August 2, 2019, plaintiff filed a request for entry of default, and default was entered as requested on that date.

On February 24, 2020, plaintiff filed for entry of default judgment.

On June 16, 2020, judgment by default was entered in the amount of $702,526.91.

On August 4, 2020, the trial court issued a writ of execution, and plaintiff obtained $63,739.79 from defendant's Wells Fargo Bank account.

## 2. Defendant's Motion To Vacate the Default Judgment

On December 7, 2020, defendant filed a motion to set aside the default and vacate the default judgment. Defendant's motion also requested an order quashing service of process, an order staying any further action to enforce the judgment, and an order requiring plaintiff to return $63,739 already obtained by plaintiff.

Defendant based its motion on the mandatory provision of section 473(b), contending the default and default judgment were entered as a result of the neglect of defendant's chief legal officer, John Grbic, as detailed in his affidavit of fault. Defendant also relied on subdivision (d) of section 473, which permits a court to set aside a void judgment, and on the court's "inherent authority to vacate a default and default judgment on equitable grounds." And, defendant contended plaintiff submitted a false proof of service.

### a. Mr. Grbic's affidavit of fault

The affidavit of fault of defendant's chief legal officer, Mr. Grbic, gives his description of what happened between the time plaintiff filed his complaint (June 3, 2019) and the time defendant moved to vacate the default judgment (December 7, 2020). That chronology is as follows.

3

In mid-July 2019, Mr. Grbic learned from one of defendant's outside counsel that plaintiff had filed a summons and complaint against defendant. He did not know if or how service had been completed, and he did not inquire, or take any action to safeguard defendant from having a default entered against it. Mr. Grbic listed the actions he should have but did not undertake. He stated he was solely responsible for the acts and omissions that resulted in the default and the default judgment.

On August 2, 2019 (the same day default was entered), Mr. Grbic e-mailed plaintiff's counsel saying defendant had received word that a complaint was filed and was "looking to retain local counsel" to handle the complaint; Mr. Grbic asked if he could provide plaintiff's counsel's name as the point of contact when counsel was retained.

On August 8, 2019, plaintiff's counsel responded affirmatively, also telling Mr. Grbic a default had already been entered. Mr. Grbic responded that "we never received service" and that counsel "will be in touch soon." Plaintiff's counsel responded (August 9) that "we served your registered agents in Delaware."

In October 2019, Mr. Grbic and plaintiff's counsel began negotiations to settle the matter. E-mails attached to Mr. Grbic's affidavit reflect settlement communications beginning on October 10, 2019, and continuing through January 27, 2020. The record does not contain a response to a counteroffer plaintiff made on January 27, 2020, or any further e-mail communications.

On February 24, 2020, as already mentioned, plaintiff filed for entry of default judgment.

Six months later, on August 28, 2020, Mr. Grbic learned, to his "complete surprise," that plaintiff's counsel had filed a default

4

package on February 24 and that plaintiff had obtained a default judgment on June 16, 2020. He learned this when Wells Fargo Bank informed him of the writ of execution plaintiff had obtained and that $63,739.79 had been debited from defendant's Wells Fargo Bank account.

Plaintiff's counsel did not give Mr. Grbic notice of his intent to file the default package, and did not mail Mr. Grbic any of the notices the court sent to plaintiff's counsel relating to the hearing on the default judgment or a copy of the judgment.

### b. The Gregory Abt declaration

In addition to the Grbic affidavit of fault, defendant's motion to vacate the default judgment included a declaration from Mr. Abt, outside counsel retained by defendant. Mr. Abt declared that on November 8, 2020, as he was preparing to file defendant's motion to vacate the default judgment, he noticed that the signature of the process server (Ms. Irizarry) on the proof of service "did not in any way shape or form" resemble her signature on the proof of service in another pending case in which he also represented defendant. He then collected eight other proofs of service signed by Ms. Irizarry from other states, and attached these to his declaration, asserting the person who signed the proof of service in this case was not the same person who signed the others. Defendant requested judicial notice of all these proofs of service.

The Abt declaration also states that "[a]ttached as Exhibit 7 to this declaration is [defendant's] motion to quash service that will be provided under a separate declaration." But no separate declaration, and no motion to quash, appears in the trial court record.

At the hearing on defendant's motion to vacate the default, on February 8, 2021, the proposed motion to quash was nowhere to be found. The hearing was held remotely because of the

5

pandemic protocols, so counsel could not provide a copy at the hearing. (This court granted defendant's motion to augment the record on appeal to include the motion to quash, together with documents showing defendant's January 1, 2021 e-filing request to attach the motion to the Abt declaration already on file, as well as a February 8, 2021 request for courtesy copy delivery and February 9, 2021 confirmation of delivery to "DEPT 12 Judge Meiers.")

### 3. Plaintiff's Opposition

Plaintiff's opposition, filed December 18, 2020, included declarations from his counsel, Neil Thakor, and from the process server, Ms. Irizarry.

Ms. Irizarry declared that, on June 12, 2019, she served Frances Hernandez with National Registered Agents, Inc. at its address in Delaware, and immediately signed the proof of service. She stated the proof of service was "not in any way forged or doctored"; the signature was hers; and she was willing to be deposed and testify to those facts.

Mr. Thakor described the chronology of events and appended much of the same e-mail correspondence with Mr. Grbic as already recounted.

In the opposition, plaintiff contended, along with erroneous legal arguments based on outdated precedent, that "default was entered as a result of the neglect of both Wanu's counsel, Wanu's Chief Executive Officer and its Board." As evidence, plaintiff pointed to the communications attached to Mr. Thakor's declaration, showing that defendant's chief executive officer (CEO) was copied on the e-mail in which plaintiff's counsel disclosed that a default had been entered against defendant (August 8, 2019); on e-mails showing plaintiff's counsel sent Mr. Grbic and the CEO a copy of the complaint on October 3, 2019; and on an e-mail in which plaintiff's counsel stated that "I

6

don't think we will be waiting for you to retain counsel much longer" (October 3, 2019).

Most of the settlement communications do not show defendant's CEO as receiving a copy, including one from plaintiff's counsel in November 2019 saying plaintiff would "proceed with the default judgment" if defendant refused its demand to inspect financial records. Plaintiff also cited an e-mail from Mr. Grbic to plaintiff's counsel (January 27, 2020), stating that "the board appears to be very interested in litigation to obtain the data needed for the other cases against [other persons]." That e-mail (which also states "we will get back to you with a response" to plaintiff's counteroffer) is the last e-mail in the record about settlement.

From the evidence just described, plaintiff contended that defendant "made the deliberate decision to not respond to the Complaint and seek relief from default," and "cannot now force its attorney to fall on his sword, to cover up for its own mistakes."

**4.  Defendant's Reply**

Defendant argued there was no evidence that any conduct on its part in any way contributed to the entry of default on August 2, 2019, which it says is the critical period for determining the viability of an attorney's affidavit of fault. Moreover, defendant contended that, even assuming defendant was in any way responsible, precedents state that mandatory relief does not require the attorney to be solely responsible, citing *Benedict v. Danner Press* (2001) 87 Cal.App.4th 923, 928–929 (*Benedict*) (observing that "[o]n its face, section 473, subdivision (b), does not preclude relief under the mandatory provision when default is entered as a result of a combination of attorney and client fault. The statute merely requires that the attorney's conduct be a cause in fact of the entry of default (see

7

§ 473, subd. (b)), but does not indicate that it must be the *only* cause").

Defendant also continued to argue that the judgment was void because of a false proof of service.

### 5. Additional Briefing

On January 4, 2021, at a hearing on the motion to vacate the default judgment, the court stayed all collection efforts and enjoined plaintiff from disbursing any funds already collected, and "set[] a hearing as to service."

On February 2, 2021, two days before the then-scheduled hearing date, plaintiff filed a supplemental brief in opposition to defendant's motion to vacate the judgment. In addition to other points unnecessary to recite here, plaintiff argued for the first time that defendant's application did not include an answer or other pleading proposed to be filed, as required by the statute, and therefore it must be denied.

Defendant responded with a declaration from counsel protesting the "11th-hour service" and, among other points, stating that its motion to vacate the default was accompanied by a motion to quash as its "other pleading proposed to be filed," as provided in the statute.

### 6. The Hearing

The court held the hearing on February 8, 2021. The parties argued about the proposed motion to quash, whether it qualified as a responsive pleading, and whether it had been filed, since there was no copy in the court's file. The hearing was remote because of the pandemic, so counsel could not provide a copy at the hearing. The parties also argued about the validity of service of the summons and complaint, and particularly the discrepancy in Ms. Irizarry's signature on the proof of service compared with other proofs of service. The trial court took the matter under submission.

8

On February 22, 2021, the court issued its ruling denying defendant's motion to set aside the default and vacate the default judgment, and served the minute order on the parties. The court did not state a reason for its decision.

Almost six months later, on August 13, 2021, defendant served notice of entry of the court's order, and filed a notice of appeal on August 17, 2021.

During the briefing of this appeal, plaintiff requested judicial notice of four documents.[1] None of the documents was judicially noticed by the trial court, and none of them has any relevance to either of the two issues we decide in this case. We therefore deny the request.

## DISCUSSION

Section 473(b) provides in pertinent part: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."

---

[1] The documents are: a motion to set aside a default that defendant filed in a different case in September 2020; an affidavit supporting that motion; a notice of confirmation of an electronic filing in this case dated August 1, 2019; and an e-mail from plaintiff's counsel to his assistant on August 2, 2019, asking her to refile and re-serve the request for entry of default.

9

"Unlike the discretionary ground for relief, a motion based on attorney fault need not show diligence in seeking relief.  The motion is timely if filed within six months of the entry of the default judgment or dismissal."  (*Younessi v. Woolf* (2016) 244 Cal.App.4th 1137, 1147; *Milton v. Perceptual Development Corp.* (1997) 53 Cal.App.4th 861, 868.)

"The purpose of [the] mandatory relief provision is to alleviate the hardship on parties who lose their day in court due to an inexcusable failure to act by their attorneys.  [Citation.]  More recently, the Court of Appeal has stated the purpose was to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits."  (*Rodriguez v. Brill* (2015) 234 Cal.App.4th 715, 723 (*Rodriguez*).)

Here, plaintiff contends two grounds support the trial court's denial of the application for mandatory relief.  We disagree, and address plaintiff's arguments in turn.

## 1.    "In Proper Form"

Plaintiff asserts the application for relief was not "in proper form" because it "did not contain a proposed answer or any other responsive pleading," and because defendant did not provide a proposed answer before the February 8, 2021 hearing.

### a.    The legal principles

We apply the following principles.

First, there is precedent stating the Legislature "intended the phrase ' "in proper form" ' to encompass the mandate that the application for relief . . . be accompanied by the pleading proposed to be filed therein."  (*Hernandez v. FCA US LLC* (2020) 50 Cal.App.5th 329, 336–337 (*Hernandez*), citing *Carmel, Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 401 (*Carmel*).)

Second, substantial compliance with that requirement is sufficient.  (*Carmel, supra,* 175 Cal.App.4th at p. 403.)

10

Third, the statutory language plaintiff relies on requires submission of "the answer or other pleading proposed to be filed" – language that on its face does not exclude a motion to quash as a proper response to a complaint.

### b. This case

The substance of plaintiff's argument is that a motion to quash is not "a responsive pleading" because it does not demonstrate readiness to proceed on the merits. Plaintiff relies on language in cases where the defendant in default proposed to file an answer together with the motion for relief from default. The issue in those cases was whether the filing of a proposed answer substantially complied with the statute if the answer was not attached to the application and was instead filed later. For example, in *Carmel,* the defendants executed a proposed answer, but the record did not show they included it with their application for relief. But the defendants "made it available at the hearing on the motion," and this "substantially complied with the requirements of the mandatory relief provision of [section 473(b)]." (*Carmel, supra,* 175 Cal.App.4th at p. 403.)

In *Carmel*, the court stated that "we interpret the phrase 'in the proper form' to include the requirement that a proposed answer accompany the application for mandatory relief." (*Carmel, supra,* 175 Cal.App.4th at p. 402.) Similarly, *Job v. Farrington* (1989) 209 Cal.App.3d 338, relied on in *Carmel*, stated that the object of the "proposed answer or other pleading" requirement "was simply to require *the delinquent party seeking leave to contest on the merits*, to show his good faith and readiness to at once file his answer in the event that leave is granted." (*Job,* at pp. 340, 341, italics added.) Both cases involved a proposed answer, not any other kind of pleading, and their language is accordingly couched in terms of a proposed answer, rather than any other kind of pleading. Neither case holds that a

11

responsive pleading must address the merits of the case, and neither court discusses what "on the merits" means.  In short, neither court considered whether a motion to quash service of process constitutes an "other pleading proposed to be filed" within the meaning of section 473(b).

Plaintiff cites the policies supporting the requirement that a proposed pleading accompany the application for relief, as described in *Carmel*:  " ' "policies [which] favor getting cases to trial on time, avoiding unnecessary and prejudicial delay, and preventing litigants from playing fast and loose with the pertinent legal rules and procedures." ' "  (*Carmel, supra,* 175 Cal.App.4th at pp. 401–402.)  While a motion to quash service would involve a delay in reaching the merits, plaintiff does not explain why it would create " ' "unnecessary and prejudicial delay," ' " or how it would constitute " ' "playing fast and loose with the pertinent legal rules and procedures.' " '  (*Ibid.*)

Plaintiff further claims a motion to quash is not a pleading at all because it is not listed in Code of Civil Procedure section 422.10 ("The pleadings allowed in civil actions are complaints, demurrers, answers, and cross-complaints") and because section 420 defines "pleadings" as "the formal allegations by the parties of their respective claims and defenses, for the judgment of the court."  We do not construe the meaning of the term "pleading" in section 473(b) so narrowly.

In a different context, *Goddard v. Pollock* (1974) 37 Cal.App.3d 137 states that a motion to quash service of summons "clearly constitutes a 'pleading' which, if timely filed, would have precluded the clerk from thereafter entering defendants' default."  (*Id.* at p. 141, citing Code Civ. Proc., § 585 [governing when judgment may be had if a defendant fails to answer or file other specified motions, including a motion to

12

quash].) Further, in many cases involving dismissals (as opposed to default judgments) under the mandatory provision, the "other pleading proposed to be filed" *is* a motion, or some other document that is not a "pleading" as defined in section 422.10. (See, e.g., *Hernandez, supra,* 50 Cal.App.5th at p. 337 [motion for attorney fees, after a settlement and dismissal]; see also *Rodriguez, supra,* 234 Cal.App.4th at pp. 719–720 [verified discovery responses, after dismissal implementing a terminating sanction for discovery abuse].) Consequently, the term "pleading" is not limited as plaintiff suggests.

Next, plaintiff contends that even if a motion to quash qualifies as an "other pleading," in this case the proposed motion to quash "was never submitted." Plaintiff correctly states that at the February 8, 2021 hearing, the trial court did not have a copy of the proposed motion to quash. But the record reflects delivery of a courtesy copy to the trial court the following day, as plaintiff admits. The record also reflects defendant's earlier, apparently unsuccessful, efforts to file the proposed motion to quash, beginning on January 1, 2021.

We conclude that defendant substantially complied with the requirement that a proposed pleading accompany a motion to vacate a default. We are aware that in other cases finding substantial compliance, the "answer or other pleading" had been lodged with the court by the day of the hearing. (*Carmel, supra,* 175 Cal.App.4th at p. 403 ["We do not know whether defendants' counsel inadvertently failed to accompany the motion with their proposed answer, or whether the proposed answer simply did not find its way into the court's file. But we perceive no reason why the court could not have reviewed the proposed answer proffered at the hearing and ordered it filed."]; see also *Rodriguez, supra,* 234 Cal.App.4th at p. 733 [substantial compliance where "verified

13

discovery responses were served the day before the hearing and copies were lodged with the court the day of the hearing"].)

The circumstances here are different. The record shows counsel tried to file the motion to quash before the hearing. Moreover, the hearing was conducted remotely, while pandemic protocols were in place, so counsel was not in a position to present a copy of the motion to quash to the trial court at the hearing. Further, the court did not decide the motion to vacate the default until February 22, 2021, well after delivery to the court of a copy of the motion to quash on February 9, 2021. Plaintiff identifies no prejudice suffered from delivery to the court one day after, rather than at, the hearing. The substantial compliance standard was met.

## 2. The Causation Issue

Because defendant's motion to vacate the default judgment was timely and in proper form, the trial court was required to vacate the default judgment "unless the court finds that the default . . . was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473(b).)

### a. The law

There is a split of authority on whether the attorney must be the sole cause of the default in order to rely on the mandatory relief provision. Some cases say mandatory relief is available only if the party against whom the judgment is taken is "totally innocent of any wrongdoing and the attorney was the *sole* cause of the default or dismissal." (*Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1248; *id.* at p. 1252 ["When deciding whether to grant relief, the court must resolve the issue whether attorney actions, or the misconduct of the parties themselves, actually caused the default or dismissal."].)

Other cases say that mandatory relief is available unless the party is guilty of intentional misconduct. (See, e.g.,

14

*SJP Limited Partnership v. City of Los Angeles* (2006) 136 Cal.App.4th 511, 520 ["Because [the attorney's] declaration indicates that his mistake or neglect caused [the plaintiff's] dismissal and because the evidence does not support a finding of intentional misconduct on [the plaintiff's] part, we find that the trial court erred in not granting [the plaintiff] mandatory relief from dismissal."]; *Benedict, supra,* 87 Cal.App.4th at pp. 930, 932 ["if the *Lang* court meant to hold that relief is precluded when a default is caused in part by a mistake or error of judgment by the client and in part by attorney oversight or neglect, we simply disagree"; "Inasmuch as [the defendants'] counsel submitted declarations indicating ways in which counsel's mistake or neglect caused the entry of default, the trial court properly granted the requested [mandatory] relief, even though [a defendant's] mistakes were an additional cause in fact of the entry of default."].)

We need not enter the fray on this point, because there is no substantial evidence to support plaintiff's contention that defendant caused the entry of default.

**b. This case**

We have described the record in detail in the Facts section, including the evidence plaintiff relies on for his claim that the attorney, Mr. Grbic, was not solely at fault (*ante,* at pp. 6–7). At best, the record shows defendant's executives may have had a limited awareness of the lawsuit. That is not enough to show defendant caused the default to be entered.

Plaintiff insists the record shows Mr. Grbic was "simply covering up for his client." But the only evidence plaintiff cites are a few e-mails *after* the default was entered, showing a copy to defendant's CEO. As already described, these were e-mails disclosing that a default had been entered; showing transmission

15

of a copy of the complaint, including a statement by plaintiff's counsel that "I don't think we will be waiting for you to retain counsel much longer," and a statement by Mr. Grbic that "[i]f we have to litigate, we're prepared to bring a full set of counterclaims."  Plaintiff also cites e-mails (*not* showing a copy to the CEO) from Mr. Grbic to counsel for plaintiff saying "we're also mindful of time to file and not going to put up with foot-dragging" on a settlement offer, and "the board appears to be very interested in litigation to obtain the data needed for the other cases against [other persons]."

In sum, there is *no* evidence defendant caused the entry of default, which occurred on August 2, 2019, before any of the e-mail correspondence plaintiff cites.  Nor can we reasonably infer, from that correspondence, that (as plaintiff argues), defendant "made the deliberate decision to not respond to the Complaint to try to settle at a discount instead of seeking relief from default."

Plaintiff contends the question whether the attorney caused the default "is in part a credibility determination," citing *Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 915.  But in that case the trial court actually made a credibility determination, and there was evidence to support it.  (*Ibid.*)  Here, the court did not explain its reasoning and did not make any credibility finding, and we find no reason to discredit Mr. Grbic's declaration.

On a final note, we do not describe in detail or consider the parties' contentions regarding the reliability of the proof of service of the summons and complaint.  That will be a matter for the trial court to decide on remand.  It is sufficient to say the dispute does not appear to be manufactured for purposes of delay because in November 2020, outside defense counsel expressed his

16

belief that the proof of service was false and, whether or not counsel was correct, he apparently had legitimate reasons to think so.

## DISPOSITION

The order denying defendant's motion for relief under section 473(b) is reversed.  The cause is remanded to the trial court with directions to vacate its order and to enter a new order granting the motion for relief; vacating the entry of default and vacating the default judgment; recalling and quashing the writ of execution, vacating the levy, and ordering return of the $63,739.79 to defendant.  Defendant shall recover its costs on appeal.


GRIMES, J.

WE CONCUR:



STRATTON, P. J.



VIRAMONTES, J.