[No. G040079. Fourth Dist., Div. Three. May 27, 2009.]

CARMEL, LTD., Plaintiff and Respondent, v.
MOHSEN TAVOUSSI et al., Defendants and Appellants.

## COUNSEL

Law Offices of M. Candice Bryner and M. Candice Bryner for Defendants and Appellants.

Rogers, MacLeith & Stolp and Thomas J. Stolp for Plaintiff and Respondent.

## OPINION

**ARONSON, J.**—Defendants Mohsen Tavoussi and Orange County Surgery Center, Inc., challenge the trial court's denial of their application under Code of Civil Procedure section 473[1] to vacate a $147,217.07 default judgment against them in favor of plaintiff Carmel, Ltd. (Carmel). Defendants contend the trial court erred when it determined defendants failed to file an attorney affidavit of fault and found they failed to file a proposed answer, a necessary step to obtain relief.

We conclude the trial court erred. Although defendants' counsel attempted to deflect blame from himself, his own declaration in support of defendants' application demonstrated that counsel's neglect was the cause of defendants' failure to answer and the entry of default. Moreover, although the record does not reflect that defendants filed a proposed answer with their application, defendants made the proposed answer available for the court's inspection and review. Accordingly, we conclude defendants substantially complied with the requirements of the mandatory provision of section 473, subdivision (b). Accordingly, we reverse and remand.

I

### FACTUAL AND PROCEDURAL BACKGROUND

Carmel sued defendants over a dispute regarding the management of their jointly owned medical office building. On November 3, 2006, the trial court overruled defendants' demurrer to Carmel's complaint and ordered defendants to answer within 15 days. At that time, defendants' counsel of record was Moore & Associates (Moore Firm). Despite the trial court's order that defendants answer within 15 days, the Moore Firm never filed an answer on defendants' behalf. On March 1, 2007, defendants substituted Ronald J. LeMieux as counsel of record in place of the Moore Firm. After substitution, LeMieux made no effort to file an answer on defendants' behalf, or otherwise protect defendants from default.

---

[1] All statutory references are to the Code of Civil Procedure, unless otherwise noted.

On March 21, 2007, Carmel mailed a request to enter default to LeMieux. On April 27, 2007, Carmel filed the request to enter default with the court, and served a copy of the request on LeMieux by mail. The clerk entered the default the same day. On August 10, 2007, LeMieux received from Carmel another request for default, accompanied by a number of other documents, including a proposed judgment. On September 19, 2007, the trial court entered a default judgment against defendants in the amount of $147,652.07.

On October 18, 2007, LeMieux filed on behalf of defendants a motion to vacate the default judgment, based on both the discretionary and mandatory provisions of section 473, subdivision (b). Attached to the motion was LeMieux's declaration, in which LeMieux explained why he failed to file an answer on behalf of defendants. LeMieux stated the Moore Firm delayed providing the case file to him until "late March, 2007." When the file arrived, LeMieux discovered a notice and an amended notice of the demurrer hearing, but nothing in the file indicated the trial court had overruled the demurrer or ordered defendants to answer. LeMieux called Carmel's counsel to introduce himself and discuss procedural issues relating to the case. Carmel's counsel, however, did not mention defendants' failure to answer the complaint.

LeMieux admitted receiving the request for entry of default Carmel mailed on March 21, 2007, but noted it had not been completely filled out. After receiving the request, LeMieux checked the case summary listings on the trial court's Web site and did not see a request for default on file. LeMieux took no action on the matter because he believed the demurrer defendants previously had filed was still pending. LeMieux noted that he did not receive a copy of the April 27, 2007, request for entry of default, despite a proof of service reflecting he was served by mail. When LeMieux received the later request to enter default and the default prove-up papers on August 10, 2007, he assigned someone from his office to go to the court and review the case file. As a result, LeMieux learned for the first time a default had been entered against defendants.

The trial court denied defendants' motion, finding: "There is no affidavit of fault and no proposed answer attached to the motion. Counsel's failure to follow up for many months when he thought a demurrer was pending but did not contact opposing counsel or review the file would not appear to be excusable neglect." Defendants now appeal.

## II

### Discussion

### A. *Defendants' Appeal Is Timely*

Carmel contends defendants' appeal is untimely and must be dismissed. We disagree.

California Rules of Court, rule 8.104(a), provides: "Unless a statute or rule 8.108 provides otherwise, a notice of appeal must be filed on or before the earliest of: [¶] (1) 60 days after the superior court clerk mails the party filing the notice of appeal a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, showing the date either was mailed; [¶] (2) 60 days after the party filing the notice of appeal serves or is served by a party with a document entitled 'Notice of Entry' of judgment or a file-stamped copy of the judgment, accompanied by proof of service; or [¶] (3) 180 days after entry of judgment."

The time to appeal in California Rules of Court, rule 8.104 was extended in the present case by rule 8.108(c), which provides: "If, within the time prescribed by rule 8.104 to appeal from the judgment, any party serves and files a valid notice of intention to move—or a valid motion—to vacate the judgment, the time to appeal from the judgment is extended for all parties until the earliest of: [¶] (1) 30 days after the superior court clerk mails, or a party serves, an order denying the motion or a notice of entry of that order; [¶] (2) 90 days after the first notice of intention to move—or motion—is filed; or [¶] (3) 180 days after entry of judgment." Rule 8.108(a) provides: "This rule operates only to extend the time to appeal otherwise prescribed in rule 8.104(a); it does not shorten the time to appeal. If the normal time to appeal stated in rule 8.104(a) is longer than the time provided in this rule, the time to appeal stated in rule 8.104(a) governs."

With these guidelines in mind, we note the court entered judgment on September 19, 2007. The record does not reflect that the clerk mailed defendants either a notice of entry of judgment or a file-stamped copy of the judgment, nor that a party to the case served such documents. Thus, the time to appeal ended, at a minimum, 180 days after judgment was entered. Defendants filed their notice of appeal on March 13, 2008, 175 days after entry of judgment. Accordingly, the appeal is timely.

■ Carmel, however, asserts the appeal is untimely because defendants waited over 30 days from the time it served a notice of ruling regarding the trial court's denial of defendants' motion to vacate the judgment. Carmel's assertion is unavailing for two reasons. First, serving a notice of ruling is not the same as serving a copy of the order or a notice of entry of the order, as contemplated by the rules governing the timeliness of appeals. (*20th Century Ins. Co. v. Superior Court* (1994) 28 Cal.App.4th 666, 672 [33 Cal.Rptr.2d 674] ["It might seem that the difference between a 'notice of ruling' and a 'notice of entry' is hypertechnical. In another context it might be."].)
■ Second, as noted above, rule 8.108(a) expressly provides that the extension provisions in rule 8.108 do not shorten the time to appeal. Accordingly, we deny Carmel's request to dismiss defendants' appeal.

## B. *The Trial Court Erred in Denying Defendants' Motion to Vacate*

### 1. *LeMieux's Declaration Supports Mandatory Relief*

■ Section 473, subdivision (b), authorizes the trial court to relieve a party from a default judgment entered because of the party's or his or her attorney's mistake, inadvertence, surprise, or neglect. The section provides for both mandatory and discretionary relief. Mandatory relief is available "whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect . . . ." (§ 473, subd. (b).) "[I]f the prerequisites for the application of the mandatory provision of section 473, subdivision (b) exist, the trial court does not have discretion to refuse relief." (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 612 [107 Cal.Rptr.2d 489] (*Leader*).) Thus, to the extent that the applicability of the mandatory relief provision does not turn on disputed facts, but rather, presents a pure question of law, it is subject to de novo review. (*Ibid.*) Where the facts are in dispute as to whether or not the prerequisites of the mandatory relief provision of section 473, subdivision (b), have been met, we review the record to determine whether substantial evidence supports the trial court's findings. (See *Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631 [85 Cal.Rptr.2d 386] [findings of fact reviewed for sufficiency].) Evidence is substantial when it is of " ' "ponderable legal significance," ' " reasonable, credible, and of solid value. (*Ibid.*)

■ "The 'attorney fault' language was added to section 473 in 1988. Prior to that time, a litigant who suffered a default or default judgment due to inexcusable attorney error could only obtain relief if he or she could persuade

the court that counsel's behavior amounted to 'total abandonment' of the client; otherwise attorney conduct that was 'simply inexcusable' fell between the two poles and provided no basis for relief. [Citation.] The amendments were clearly designed to fill this gap. The purpose was threefold: to relieve the innocent client of the consequences of the attorney's fault; to place the burden on counsel; and to discourage additional litigation in the form of malpractice actions by the defaulted client against the errant attorney." (*Solv-All v. Superior Court* (2005) 131 Cal.App.4th 1003, 1009 [32 Cal.Rptr.3d 202], fn. omitted (*Solv-All*).) But the mandatory provision of section 473, subdivision (b), "protects only the innocent client [and] provides no relief for the culpable client who participates in conduct which led to the default . . . ." (*Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1251–1252 [92 Cal.Rptr.2d 322] (*Lang*).) If the trial court finds that the moving party's misconduct was a contributing cause of the default, that party "cannot rely on the mandatory relief provision of section 473." (*Lang*, at p. 1252.)

 Here, the trial court denied the motion in part because defendants did not file an attorney affidavit of fault. True, defendants failed to file a declaration from the Moore Firm, which represented plaintiff at the time the answer was first due. Moreover, defendants' later counsel, LeMieux, argued at the hearing: "I did not file a declaration of fault because I was not at fault. My law firm was not at fault." But without expressly taking the blame, LeMieux's declaration in support of the motion unmistakably demonstrated his fault.

Specifically, in his declaration, LeMieux stated he began representing defendants on March 1, 2007, some 57 days *before* default was entered on April 27, 2007. There is no question defendants could have avoided a default judgment had LeMieux acted with any reasonable degree of diligence. LeMieux admitted he knew an answer had not been filed, explaining he believed the demurrer previously filed by the Moore Firm was still pending. Yet, LeMieux knew the demurrer had been filed in September 2006, and was aware of only one amended hearing notice, which set November 3, 2006, as the hearing date for the demurrer. These facts at least should have prompted LeMieux to contact opposing counsel and ask about the status of the demurrer. Although LeMieux spoke with opposing counsel in late March 2007, "to discuss procedural matters relating to this case," LeMieux failed to ask about the status of the demurrer.

 Indeed, even after LeMieux received a copy of a request for entry of default in March 2007 he undertook no action to ascertain the status of the demurrer until after the court entered judgment months later in August 2007. As the trial court noted in its order: "Counsel's failure to follow up for many

months when he thought a demurrer was pending but did not contact opposing counsel or review the file would not appear to be excusable neglect." We agree with the trial court. LeMieux's actions do not constitute excusable neglect, but neglect of an inexcusable nature. Nonetheless, for purposes of section 473, subdivision (b), " '[r]elief is mandatory when a complying affidavit is filed, even if the attorney's neglect was inexcusable.' [Citation.]" (*SJP Limited Partnership v. City of Los Angeles* (2006) 136 Cal.App.4th 511, 516–517 [39 Cal.Rptr.3d 55].) Although LeMieux attempted in his declaration to deflect fault from himself, the declaration has precisely the opposite effect. ▮ When an attorney "attests to"—that is, declares to be true—facts demonstrating he or she was at fault, application of section 473 is not negated by the attorney's contrary opinion.

▮ Conversely, nothing in the record demonstrates any neglect or wrong-doing on the part of LeMieux's clients. Where "there is *no evidence* that [movants] were aware of counsel's decision to delay filing an answer, or that they suggested or agreed that he should do so[,] . . . they do not share responsibility for the delay." (*Solv-All, supra*, 131 Cal.App.4th at p. 1011, original italics.) Although we defer to the factual findings of the trial court where the evidence is in dispute, the evidence here is undisputed that defendants' failure to prevent the entry of their default was caused by LeMieux's neglect.

### 2. *Defendants Substantially Complied with the Requirement to Submit a Proposed Answer with the Motion*

▮ The discretionary relief provision of section 473, subdivision (b), provides that the "[a]pplication for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted . . . ." The mandatory relief provision, however, does not expressly include this requirement, but merely requires the application to be "in proper form." (§ 473, subd. (b).) The question is whether the Legislature intended the phrase "in proper form" to encompass the mandate that the proposed answer accompany the application. We conclude the answer is yes.

The purpose of the proposed pleading requirement of section 473 is to compel the delinquent party to demonstrate his or her good faith and readiness to proceed on the merits. (*Job v. Farrington* (1989) 209 Cal.App.3d 338, 341 [257 Cal.Rptr. 210].) The requirement helps ensure courts do not become " ' "a sanctuary for chronic procrastination and irresponsibility on the part of either litigants or their attorneys," ' " and supports " 'policies [which] favor getting cases to trial on time, avoiding unnecessary and prejudicial

delay, and preventing litigants from playing fast and loose with the pertinent legal rules and procedures.' " (*Iott v. Franklin* (1988) 206 Cal.App.3d 521, 531 [253 Cal.Rptr. 635].)

These policies apply with even greater force when mandatory relief is being sought. Under the discretionary provisions of section 473, subdivision (b), a trial court may consider whether attorneys or their clients are abusing the rules or causing needless delay in deciding whether to grant relief. Because relief under the mandatory provision must be granted when the requisites of the statute are met, a trial court would have little or no ability to curb abuses if a proposed answer were not required. An attorney could repeatedly miss deadlines to file an answer, and the trial court would be required to excuse resulting defaults so long as the attorney confessed fault on each occasion. Such an interpretation would undermine the purposes of the statute. Thus, we interpret the phrase "in the proper form" to include the requirement that a proposed answer accompany the application for mandatory relief.

By including the proposed answer requirement, however, we also apply the case law interpreting it. We must liberally construe the provisions of section 473. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 256 [121 Cal.Rptr.2d 187, 47 P.3d 1056] (*Zamora*).) " 'It is well settled that appellate courts have always been and are favorably disposed toward such action upon the part of the trial courts as will permit, rather than prevent, the adjudication of legal controversies upon their merits.' " (*Id.* at pp. 255–256.)

Because the purpose of the proposed answer requirement is to provide the delinquent party with an opportunity to show good faith and readiness to answer the allegations of the complaint, courts have held substantial compliance to be sufficient. On this point, our Supreme Court observed: "The plain object of the provision was simply to require the delinquent party seeking leave to contest on the merits, to show his good faith and readiness to at once file his answer in the event that leave is granted by producing a copy of the proposed answer for the inspection of his adversary and the court." (*County of Los Angeles v. Lewis* (1918) 179 Cal. 398, 400 [177 P. 154]; see also *County of Stanislaus v. Johnson* (1996) 43 Cal.App.4th 832, 838 [51 Cal.Rptr.2d 73] ["objectives of the 'accompanied by' requirement, i.e., a screening determination that the relief is not sought simply to delay the proceedings, are satisfied by the filing of a proposed answer at any time before the hearing"].)

Here, the record does not reflect that defendants included a copy of their proposed answer with their motion. But there is evidence defendants prepared

a proposed answer when they filed their motion, and made it available at the hearing on the motion. Indeed, some evidence suggests defendants did accompany their motion with a proposed answer.

One of the defendants, Mohsen Tavoussi, submitted a declaration in support of the motion, in which he represents: "I have a good and meritorious defense to the complaint as shown *by the proposed Answer which is filed herewith.*" (Italics added.) Although the record is silent on whether defendants served the proposed answer on Carmel, we note that Carmel *did not* allege defendants had failed to include a proposed answer in their opposition to the motion. At the hearing on the motion, defendants' counsel protested the court's tentative ruling, representing, "I did attach an answer, your Honor, that was filed." When the trial court reviewed the file and did not find the proposed answer, defendants' counsel told the court he had a copy of the proposed answer that he had filed with the motion. The trial court did not ask to review the copy, but simply replied, "Okay. The ruling stands." At our request, defendants have lodged a copy of their proposed answer, reflecting an execution date of October 18, 2007, the same day defendants' counsel executed the motion.

We do not know whether defendants' counsel inadvertently failed to accompany the motion with their proposed answer, or whether the proposed answer simply did not find its way into the court's file. But we perceive no reason why the court could not have reviewed the proposed answer proffered at the hearing and ordered it filed. Carmel did not assert the absence of a proposed answer as a basis for opposing the motion and would have suffered no prejudice if the court allowed defendants to file the answer at the hearing.

The purpose of the mandatory relief provision of section 473 is " 'to alleviate the hardship on parties who *lose their day in court* due solely to an inexcusable failure to act on the part of their attorneys.' " (*Zamora, supra,* 28 Cal.4th at p. 257, original italics.) In light of this purpose, we conclude defendants proffer of their proposed answer at the hearing on their motion in the present case substantially complied with the requirements of the mandatory relief provision of section 473, subdivision (b). Accordingly, the default judgment must be reversed and the default vacated, allowing defendants to file their answer. Of course, nothing prevents Carmel from again taking defendants' default if defendants fail to answer within the time granted by the trial court on remand. Moreover, in accordance with section 473, subdivision (b), the trial court shall direct LeMieux to pay reasonable compensatory legal fees and costs to opposing counsel or parties.

## III

### Disposition

The judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion. In the interests of justice, each side is to bear its own costs of this appeal.

Bedsworth, Acting P. J., and Fybel, J., concurred.

On June 26, 2009, the opinion was modified to read as printed above.